**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL D. VITALI, | ) | No. ED CV 13-2383-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 27, 2013, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on February 3, 2014, and March 3, 2014.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 9, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

### BACKGROUND

Plaintiff was born on June 6, 1959. [Administrative Record ("AR") at 106.]  He has a twelfth grade education and past relevant work experience as a driver of a sales route.  [AR at 40, 52, 116.]

On August 25, 2010, plaintiff filed his application for Disability Insurance Benefits, alleging he has been unable to work since December 30, 2008,[1] due to back pain, neck pain, and depression.   [AR at 106-07, 112-15.]    After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 60-69.]  A hearing was held on August 14, 2012, at which time plaintiff appeared with counsel and testified on his own behalf.  [AR at 35-55.]  A Vocational Expert ("VE") also testified.  [AR at 51-54.]  On August 29, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from December 30, 2008, through the date last insured.  [AR at 13-22.]  When the Appeals Council denied plaintiff's request for review on October 25, 2013 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1]    At the hearing, plaintiff amended his onset date from October 3, 2003, to December 30, 2008.  [AR at 37; Joint Stipulation ("JS") at 2.]

1    conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)

2    (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

3    1998) (same).   When determining whether substantial evidence exists to support the

4    Commissioner's decision, the Court examines the administrative record as a whole, considering

5    adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

6    see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

7    consider the entire record as a whole and may not affirm simply by isolating a specific quantum

8    of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is

9    susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

10   528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

11   466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

12   ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

13

14                                          **IV.**

15                          **THE EVALUATION OF DISABILITY**

16          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

17   to engage in any substantial gainful activity owing to a physical or mental impairment that is

18   expected to result in death or which has lasted or is expected to last for a continuous period of at

19   least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

20   1992).

21

22   **A.     THE FIVE-STEP EVALUATION PROCESS**

23          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

24   whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

25   828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

26   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

27   claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

28   substantial gainful activity, the second step requires the Commissioner to determine whether the

1  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

2  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

3  If the claimant has a "severe" impairment or combination of impairments, the third step requires

4  the Commissioner to determine whether the impairment or combination of impairments meets or

5  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt.

6  P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's

7  impairment or combination of impairments does not meet or equal an impairment in the Listing,

8  the fourth step requires the Commissioner to determine whether the claimant has sufficient

9  "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the

10  claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past

11  relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

12  of disability is established.  The Commissioner then bears the burden of establishing that the

13  claimant is not disabled, because he can perform other substantial gainful work available in the

14  national economy.  The determination of this issue comprises the fifth and final step in the

15  sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

16  F.2d at 1257.

17

18  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

19          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

20  gainful activity since his amended alleged disability onset date of December 30, 2008, through his

21  date last insured of December 31, 2008.  [AR at 15.][2]  At step two, the ALJ concluded that plaintiff

22  has the severe impairment of "degenerative disc disease of the lumbar spine."  [Id.][3]  At step three,

23  the ALJ determined that plaintiff does not have an impairment or combination of impairments that

24  _____

25      [2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security
     Act through December 31, 2008.  [AR at 15.]

26
27      [3]    The ALJ found that plaintiff's "medically determinable mental impairment of affective mood
     disorder did not cause more than minimal limitation on [plaintiff]'s ability to perform basic mental
     work activities and was therefore nonsevere."  [AR at 16.]  Plaintiff does not challenge this
28  conclusion.  [See JS at 4.]

4

meets or equals any of the impairments in the Listing.  [AR at 17.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[5] with the following limitations:  "lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk 6 hours total in an 8 hour day; sit 6 hours total in an 8 hour day; occasionally climb stairs, but was precluded from climbing ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl."  [AR at 17.]  At step four, the ALJ determined plaintiff is unable to do his past relevant work.  [AR at 20.]  At step five, with the assistance of the VE, the ALJ determined that there were jobs that exist in significant numbers that plaintiff could perform, including: small products assembler (Dictionary of Occupational Titles ("DOT") 706.684-022), and office helper (DOT 239.567-010).  [AR at 21-22.]  Thus, the ALJ concluded that plaintiff was not disabled at any time from December 30, 2008, through December 31, 2008, his date last insured.  [AR at 22.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly:  (1) rejected the opinion of his treating physician; and (2) discounted plaintiff's credibility.  [JS at 4.]  As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.      TREATING PHYSICIAN OPINION**

---

[4]      RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[5]      20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

1    Plaintiff contends that the ALJ erred by failing to provide specific and legitimate reasons for

2    rejecting the opinion of his treating physician, Dr. Daniel A. Capen.  [JS at 4-11, 16-18.]

3    In evaluating medical opinions, the case law and regulations distinguish among the opinions

4    of three types of physicians:  (1) those who treat plaintiff (treating physicians); (2) those who

5    examine but do not treat plaintiff (examining physicians); and (3) those who neither examine nor

6    treat plaintiff (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527; see also Lester,

7    81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those

8    of other physicians, because treating physicians are employed to cure and therefore have a greater

9    opportunity to know and observe plaintiff.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen

10   v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

11   Where a treating physician's opinion does not contradict other medical evidence, the ALJ

12   must provide clear and convincing reasons to discount it.  Lester, 81 F.3d at 830; see also

13   Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Where a treating physician's opinion

14   conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons

15   supported by substantial evidence in the record to reject it.  Lester, 81 F.3d at 830; see also

16   McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989).  "The opinion of an examining

17   physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."

18   Lester, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide

19   "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician,

20   and specific and legitimate reasons supported by substantial evidence in the record to reject the

21   contradicted opinion of an examining physician.  See id. at 830-31.  The ALJ can meet the requisite

22   specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

23   conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v.

24   Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and

25   explain why they, rather than the [treating] doctors', are correct."  Id.

26   On April 21, 2011, Dr. Capen opined that because of plaintiff's L4-5 posterior interbody

27   fusion surgery on February 23, 2011, plaintiff:  could lift a maximum of 5 pounds occasionally, and

28   5 pounds frequently; could not sit, stand or walk for more than 2 hours; would need to alternate

between sitting and standing; and would need to use a walker and back brace.  [AR at 526.]  Dr. Capen also precluded plaintiff from all postural activities, stating that plaintiff could not climb, balance, stoop, kneel, crouch, or crawl.  [AR at 527.]  Moreover, Dr. Capen noted that plaintiff's condition was "permanent, [with] slow improvement expected."  [Id.]  Dr. Capen diagnosed plaintiff with:  post-operative status following L4-5 posterior lumbar interbody fusion on February 23, 2011, herniated nucleus pulposus, junctional discopathy L4-5, sciatica, and low back pain.  [AR at 529.] He further opined:  "[Plaintiff] has had slow progress, at this time, he is in a post-operative state, recovery expected to last another 6 months to one year;" "[plaintiff's] condition will be permanent. [Plaintiff] is still in recovery of a major spine surgery."  [AR at 530-31.]

The ALJ specifically rejected this opinion because:  (1) it was not supported by Dr. Capen's own clinical findings; (2) Dr. Capen's opinion was inconsistent with plaintiff's daily activities; and (3) Dr. Capen's opinion was issued after plaintiff's date last insured.  [AR at 20.]  As set forth below, substantial evidence does not support the ALJ's decision to reject Dr. Capen's opinion.

### 1.    Clinical Findings

The ALJ gave "great weight" to the medical source statement provided by the nonexamining physician and agency medical consultant, A. Lizarraras, M.D., while rejecting Dr. Capen's opinion because "[t]reatment notes from Dr. Capen do not demonstrate any clinical findings that warrant the limitations assessed."  [AR at 19, 20.]

Dr. Capen is a specialist in orthopedic evaluation and treatment.  [AR at 181.]  He has been treating plaintiff since October 3, 2003.  [AR at 181-88.]  In the course of many years treating plaintiff, Dr. Capen regularly completed orthopedic evaluations and progress reports regarding plaintiff's condition.  [See, e.g., AR at 248-56, 259-60, 268-69, 272-73, 276-77, 280-91, 303-06, 311, 313-18, 320-39, 341-44, 348-51, 355-95, 406-15, 526-27, 529-31, 533-37.]  Dr. Capen's treatment notes reflect that he conducted both physical examinations of plaintiff as well as x-ray examinations.  [See, e.g., AR at 356, 363, 366, 370, 374, 377.]  Dr. Capen also referred plaintiff for multiple MRIs, neurological testing, and pain management.  [See, e.g., AR at 399-405, 420-34, 451-86.]  For example, on August 22, 2008, Dr. Capen's orthopedic examination of plaintiff

revealed: "[r]adiographs of the lumbar spine were taken today.  The films show retrolisthesis, and a somewhat of a collapsed L4-5 disc space, that substantially encroaches the neural foraminal outflow at the L4-5 space."  [AR at 304.]  On November 7, 2008, Dr. Capen administered two intramuscular injections and opined that "[a]t this point in time, the patient is clearly getting worse." [AR at 280-84.]  Additionally, Dr. Capen noted, "[plaintiff and I] had a long discussion, in regards to the junctional discopathy and junctional level surgery, an L4-5 posterior lumbar interbody fusion." [Id.]  Dr. Capen opined that plaintiff could not walk, sit or stand for longer than 45 minutes without needing to adjust and that plaintiff's condition was "temporarily totally disabled."  [AR at 282-83.] On December 12, 2008, Dr. Capen stated that plaintiff "has developed a junctional level, severe spinal discopathy, and responded only temporarily to lumbar blocks . . . . [Plaintiff] needs surgical intervention."  [AR at 286.] He noted that "[plaintiff] is aware that [surgery] is the best available medical attempt at restoration of a near normal lifestyle, restoration of function, as well as an improvement in quality of life;" and concluded that plaintiff's condition was "[t]emporarily [t]otally [d]isabled."  [AR at 287-88.]

Dr. Capen's opinion regarding plaintiff's condition is corroborated by diagnostic imaging studies reflecting that plaintiff has:  disc protrusion at multiple vertebrae throughout the lumbar spine, abnormal nerve conduction, left chronic radiculopathy, and "an osteophyte . . . which is causing neural foraminal stenosis;" "decreased disc height, disc desiccation and disc bulge L4-L5;" L2/L3, L3/L4, L4/L5, and L5/S1 disc protrusions that are causing effacement of the L2, L3, L4, and L5 exiting nerve roots; L2/L3 and L3/L4 disc protrusions that are causing effacement of the thecal sac; Schmorl's node deformity of the endplates from T11 through L2; bilateral facet arthrosis; and facet joint and ligamenta flava hypertrophy at the L1/L2, L3/L4, L4/L5, and L5/S1 vertebrae.  [See, e.g., AR at 432-33, 449-54, 465-66.]  Plaintiff has undergone three spinal surgeries:  a L5 lumbar fusion in April 2005, hardware removal in May 2007, and a L4-5 lumbar fusion in February 2011. [See AR at 18, 43-44, 317, 328, 397, 533.]

Dr. Lizarraras completed a Physical Residual Functional Assessment ("RFC assessment") on December 29, 2010, wherein boxes were checked off to indicate plaintiff's functional capacity. [AR at 504-08.]  The RFC assessment refers to a Case Analysis form also completed by Dr.

1  Lizarraras wherein:  (1) plaintiff's medical history is summarized; (2) no inconsistencies are listed

2  between the medical reports and plaintiff's allegations; and (3) following the summation of plaintiff's

3  medical record,  Dr. Lizarraras commented that "[w]ith antalgic gait, limited [range of motion] in

4  neck (fusion) and L-spine (fusion), would [plaintiff] be a sed[entary]?"  [AR at 524.]  Dr. Lizarraras

5  found plaintiff capable of performing light work.  [See AR at 504-08; cf. AR at 524.]

6       The ALJ rejected Dr. Capen's opinion while according Dr. Lizarraras' opinion "great weight,"

7  because Dr. Lizarraras' report "adequately considers the functional limitations that resulted from

8  [plaintiff]'s severe impairment."  [AR at 20.]  However, "[t]he opinion of a nonexamining medical

9  advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of

10 an examining or treating physician."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602

11 (9th Cir. 1999); see also Lester, 81 F.3d 821; Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir.

12 1990); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984).  Rather, the ALJ is required to "set[]

13 out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

14 interpretation thereof, and making findings."  See Morgan, 169 F.3d at 600-01 (citing Magallanes

15 v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th

16 Cir. 1986)).  "Even when contradicted by an opinion of an examining physician that constitutes

17 substantial evidence, the treating physician's opinion is 'still entitled to deference.'"  Orn, 495 F.3d

18 at 632-33 (citing Social Security Ruling[6] ("S.S.R.") 96-2p).

19      Here, Dr. Capen's opinion was based on years of treating plaintiff, physically examining

20 plaintiff, and reviewing diagnostic evidence from multiple MRIs, nerve conduction studies, and x-

21 rays.  More weight generally is given to the opinions of treating physicians because they "are likely

22 to be the medical professionals most able to provide a detailed, longitudinal picture of [plaintiff's]

23 medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

24 

---

25      [6]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's

26 implementing regulations and the agency's policies.  SSRs are binding on all components of the
   [Social Security Administration].  SSRs do not have the force of law.  However, because they

27 represent the Commissioner's interpretation of the agency's regulations, we give them some
   deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."

28 Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(c)(2)(i), (ii) (according weight to a treating physician's opinion depending on length of the treatment relationship, frequency of visits, and nature and extent of treatment received); see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). Dr. Lizarraras' report did not point to any contradictory medical evidence, or explain the basis for his RFC assessment. Accordingly, it was error for the ALJ to reject Dr. Capen's opinion while according Dr. Lizarraras' opinion "great weight." See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (finding reversible error where "[t]he 'diagnosis' upon which the [ALJ] relies to base h[is] decision consists of check marks in boxes on a form supplied by the Secretary. This 'opinion' is in sharp contrast to the detailed analysis of the doctor [who had been treating plaintiff] for over five years.").

Therefore, the lack of clinical findings was not a specific and legitimate reason to reject Dr. Capen's opinion.


### 2.    Plaintiff's Daily Activities

The ALJ also rejected the opinion of plaintiff's treating physician based on the determination that plaintiff's "reported activities of going to the gym, taking walks daily, and performing exercises, alone, demonstrate greater physical capacity than assessed by Dr. Capen." [AR at 20 (emphasis in the original).] See generally Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that plaintiff suffered from severe impairment based, in part, on plaintiff's reported activities of daily living that contradicted that conclusion); but see Reddick, 157 F.3d at 725 (The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.").

As noted above, in November 2008, Dr. Capen opined that plaintiff was unable to walk, stand or sit for longer than 45 minutes without a change in position. [AR at 282.] By April 2011,

Dr. Capen opined that plaintiff was unable to stand, sit or walk for greater than 2 hours.  [AR at 526.]  At the August 14, 2012, hearing plaintiff testified that he walks for "about a block, block and a half" before pain in his legs starts and that "by then [he] would have to just sit down and rest."  [AR at 45.]  There is no evidence in the record that plaintiff walked excessively, or for any duration greater than his testimony of one to one-and-one-half blocks.  With respect to plaintiff's activities of exercise and aqua-therapy, these activities were prescribed as part of plaintiff's treatment plan.  [AR at 301.]  Dr. Capen prescribed plaintiff "aqua-therapy," and requested a gym membership for plaintiff to complete aqua-therapy, as well as encouraged plaintiff to "continue his home exercise program."  [See AR at 360, 370.]  The Commissioner's regulations require plaintiff to follow his prescribed treatment plan.  20 C.F.R. § 404.1530.  Because the ALJ did not set forth a detailed explanation as to how plaintiff's daily activities "alone, demonstrate greater physical capacity than assessed by Dr. Capen," this was not a specific or legitimate reason to reject Dr. Capen's opinion.

### 3.    Date Last Insured

The ALJ also rejected the opinion of Dr. Capen because it was issued after plaintiff's date last insured, December 31, 2008.  [AR at 20.]

While the ALJ has to consider the limitations and impairments that were in existence prior to the date last insured, he cannot ignore probative evidence simply because it post-dates that time.  See generally Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1228-29 (9th Cir. 2010); see also Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.1988) ("[M]edical evaluations made after the expiration of [plaintiff]'s insured status are relevant to an evaluation of the pre-expiration condition."); Lester, 81 F.3d at 832 ("[M]edical evaluations made after the expiration of [plaintifff]'s insured status are relevant to an evaluation of the pre-expiration condition.") (citation omitted).

Here, plaintiff's impairment of back pain has existed since October 2003, well prior to the expiration of his insured status.  [See AR at 181-88.]  Moreover, plaintiff's back pain formed the basis of his instant claim for benefits and was a subject of the ALJ's inquiry during the August 14, 2012, hearing.  [See AR at 35-55, 118.]  Thus, medical evaluations regarding plaintiff's back pain made after the expiration of his insured status could very well be relevant to an evaluation of the

pre-expiration condition.  Here, however, the ALJ selectively relied on only certain portions of the record to reach his conclusion.  See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  For example, on November 7, 2008, Dr. Capen opined that plaintiff was precluded from walking, standing, and sitting for more than 45 minutes. [AR at 282.]  In that same report, Dr. Capen opined that plaintiff was "clearly getting worse," and "remains temporarily totally disabled."  [AR at 282-83.]  Although that medical opinion was formed very near in time to plaintiff's date last insured, the ALJ did not mention it in reaching his decision, focusing instead on an April 2011 opinion that he rejected, in part, because of its date.  In these circumstances, simply stating that an opinion post-dates the date last insured is not a specific or legitimate reason to reject the opinion of plaintiff's treating physician.

Accordingly, based on the above, the Court cannot find that the ALJ provided specific and legitimate reasons to reject the opinion of plaintiff's treating physician, Dr. Daniel A. Capen, or that the decision to do so was supported by substantial evidence.


**B.    PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ erred by discounting his subjective symptom testimony.  [JS at 18-20, 24-26.]

"To determine whether [plaintiff]'s testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether [plaintiff] has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell, 947 F.2d at 344).  Second, if plaintiff meets the first test, the ALJ may reject his testimony about symptom severity "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing plaintiff's

credibility include: (1) plaintiff's reputation for truthfulness; (2) inconsistencies in plaintiff's testimony or between his testimony and his conduct; (3) plaintiff's daily activities; (4) plaintiff's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which plaintiff complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. § 404.1529(c).

Where, as here, the ALJ does not find "affirmative evidence" of malingering, the ALJ's reasons for rejecting plaintiff's credibility must be clear and convincing.  See Benton, 331 F.3d at 1040 (holding that where there is no evidence of malingering, the ALJ can reject plaintiff's testimony only by "expressing clear and convincing reasons for doing so").  "General findings [regarding plaintiff's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines [plaintiff]'s complaints."  Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (same).  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit plaintiff's testimony regarding pain."  Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of [plaintiff]'s allegations of disabling pain."  Id. at 346.  As such, an "implicit" finding that plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

The ALJ found plaintiff's subjective symptom testimony to be "not fully credible." [AR at 18.] The ALJ reasoned that the severity of plaintiff's pain allegations was unsupported by: (1) objective clinical findings; and (2) plaintiff's activities of daily living.  [AR at 18-19.]

Having carefully reviewed the record, the Court concludes that the reasons for the ALJ's credibility determination are neither clear nor convincing.

### 1.    Objective Evidence of Record

The ALJ concluded that plaintiff was "not fully credible" because "clinical findings" do not support the severity of plaintiff's alleged pain.  [AR at 18-19.]

13

1    While a lack of objective medical evidence supporting a plaintiff's subjective complaints

2    cannot provide the <u>only</u> basis to reject a claimant's credibility (<u>see</u> <u>Light v. Soc. Sec. Admin.</u>, 119

3    F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom

4    testimony.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical

5    evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can

6    consider in his credibility analysis."); <u>accord</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

7    Here, as support for his conclusion, the ALJ stated:  "[p]hysicians observed decreased range

8    of motion in the lumbar spine, tenderness and paralumbar spasm, and positive straight leg raising;

9    but, neurological findings were overwhelmingly normal, indicative of well-preserved function."  [AR

10   at 19.]  However, the ALJ appears to cite only select portions of the objective medical evidence in

11   reaching this conclusion.  The ALJ cites four medical sources:  Drs. Martin Krell, neurosurgeon;

12   Daniel Capen, orthopedic surgeon; Katrina Babcock, osteopathic medicine; and Shirish Patel.  [AR

13   at 19.]  The ALJ highlighted that Dr. Krell "observed normal and equal motor strength in all

14   extremities."  But Dr. Krell also diagnosed plaintiff as having "residual neurological disability," and

15   found that plaintiff had "[c]hronic low back pain with objective radiculopathies into both lower

16   extremities," and "[l]oss of motion segment integrity due to an L5-S1 arthrodesis.  Loss of relevant

17   Achilles reflexes and abnormal electromyographic findings.  Evidence of residual bilateral lower

18   extremity radiculopathy."  [AR at 19, 220, 223.]  Similarly, the ALJ only cites a portion of Dr. Katrina

19   Babcock's report, noting that she observed "grossly intact sensation" in plaintiff's lower extremities.

20   [AR at 19.]  However, the ALJ fails to mention that on January 9, 2008, Dr. Babcock's clinical

21   findings revealed an "abnormal nerve conduction study," and on September 24, 2008, Dr.

22   Babcock's clinical findings indicated both an "abnormal nerve conduction study" and an "abnormal

23   electromyographic study."  [AR at 294, 456.]  The ALJ also cites to "an attending physician, Dr.

24   Shirish Patel, M.D.," who observed that "all of [plaintiff]'s neurological functions were 'within normal

25   limits' following his May 2007 surgery."  [AR at 19.]  The ALJ did not explain how this portion of Dr.

26   Patel's observation is relevant to the overall credibility determination regarding plaintiff's pain

27   testimony given that Dr. Patel simultaneously observed that plaintiff was on a device for pain control

28   and apparently not fully ambulatory.  [<u>See</u> AR at 328 (noting plaintiff was post-op from "lumbosacral

spinal surgery" and "will be monitored closely, ambulated with physical therapy, and gradually progressed. [Plaintiff] will be kept on PCA for pain control . . . .").] The remaining source cited by the ALJ was plaintiff's treating physician, Dr. Capen, whom the ALJ concludes "observed intact reflexes and generally normal gait." [AR at 19.] However, the ALJ fails to explain why his generalization regarding Dr. Capen's treatment notes is more probative of plaintiff's pain credibility than the objective evidence indicating that Dr. Capen found plaintiff's complaints credible enough to performed multiple spinal surgeries to alleviate that pain.

Moreover, the ALJ's conclusion that plaintiff's neurological function was "well-preserved" is also unconvincing given the independent medical evidence showing plaintiff's neurological function to be impinged and/or effaced. For example, on January 14, 2008, MRI examinations revealed that plaintiff's L2/L3 disc protrusion was causing "encroachment on the right L2 and effacement of the left L2 exiting nerve root." [AR at 465-66.] Similar findings were present for plaintiff's L3, L4, and L5 nerve roots. [AR at 466.] On February 27, 2008, plaintiff's MRI revealed that his L2/L3 "broad-based disc protrusion . . . effaces the thecal sac, producing bilateral neural foraminal narrowing and encroachment of the right L2 and effacement of the left L2 exiting nerve root." [AR at 432.] On April 17, 2008, plaintiff underwent "selective root nerve block." [AR at 430.] On September 10, 2008, plaintiff's MRI again revealed "slight narrowing of the neural foramina." [AR at 451.] Thus, it appears that the ALJ came to his conclusion that plaintiff's nerve function was "overwhelmingly normal [and] indicative of well-preserved function" by isolating a specific quantum of supporting evidence.

### 2.    Plaintiff's Daily Activities

After discounting plaintiff's credibility by selectively relying on certain portions of plaintiff's treatment record, the ALJ went on to opine that plaintiff's "activities of daily living do not support the severity of the pain symptoms alleged," specifically because plaintiff reported he "was doing home exercises regularly, going to the gym 2 times per week, performing aqua therapy, and even taking daily walks." [AR at 19.] Furthermore, the ALJ reasoned that plaintiff "was able to cook, and prepare meals, able to perform light cleaning, and still maintain a social life." [Id.] Therefore, the

1   ALJ concluded that "[a]ll of these activities are evidence of physical capacity transferable to basic

2   work activity." [Id.]

3         An ALJ may discredit testimony when plaintiff reports participation in everyday activities

4   indicating capacities that are transferable to a work setting. Molina v. Astrue, 674 F.3d 1104, 1113

5   (9th Cir. 2012).  However, "[e]ven where those activities suggest some difficulty functioning, they

6   may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a

7   totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th

8   Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

9         With respect to his daily activities, plaintiff testified that:  he walks "about a block, block and

10   a half, and then the pain in [his] legs start[s] and [that] by then [he] would have to just sit down and

11   rest;" he can only sit for 20 to 25 minutes; he can only stand for 30 minutes; he cannot lift anything

12   more than 10 to 15 pounds; he has difficulty "putting on [his] socks [and] pants;" he has problems

13   "bending down [and] washing;"  he has a chair in the shower so that he can attend to his personal

14   hygiene; he washes "a couple of dishes . . . [and] vacuum[s] . . . a little bit;" he rests during the day

15   because he has trouble sleeping at night due to pain; he wakes up two to three times a night from

16   pain; he cannot drive far distances; he cooks for himself by making "TV dinners;" and "some days

17   [he] just cannot even get out of bed" because of pain.  [AR at 45-50.]

18         Here, other than his conclusory statement that plaintiff's activities "are transferable to basic

19   work activity," the ALJ fails to provide any analysis as to how this is so. See Gonzalez v. Sullivan,

20   914 F.2d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support

21   an adverse credibility determination unless the ALJ makes an explicit finding that plaintiff's ability

22   to perform those activities translated into the ability to perform appropriate work activities on an

23   ongoing and daily basis).  As noted by the ALJ, while plaintiff "hop[ed] to return to work," and

24   "consider[ed] working in a car dealership," there is no evidence plaintiff actually engaged in any

25   work activity.  [See AR at 227, 236.]  Furthermore, to the extent that the ALJ relies upon home

26   exercise, the gym, walking, and pool therapy, these were activities prescribed as part of plaintiff's

27   treatment plan.  [See, e.g., AR at 232, 301, 370, 377.]  Additionally, although plaintiff testified to

28   engaging in these various activities, the amount of involvement he described was minimal, and

does not describe a person engaged in basic work activity.  Thus, the ALJ failed to provide a clear and convincing reason to discount plaintiff's subjective symptom testimony, let alone make an explicit finding that plaintiff could perform appropriate work activities on an ongoing and daily basis.

The reasons given by the ALJ for discounting plaintiff's credibility do not sufficiently allow the Court to conclude that the ALJ did so on permissible grounds.  Thus, the Court is unable to defer to the ALJ's credibility determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (holding that a court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995).

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits.  McAllister, 888 F.2d at 603.  Where:  (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).

Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met).  In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in

1    Connett in a published decision, clarified that the nature of the flexibility described in Connett is

2    "properly understood as requiring courts to remand for further proceedings when, even though all

3    conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

4    serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.   In this

5    case, as discussed above, although the ALJ failed to provide legally sufficient reasons for rejecting

6    the opinion of plaintiff's treating physician and for discounting plaintiff's credibility, it is not clear that

7    if the improperly discredited evidence were credited as true the ALJ would be required to find

8    plaintiff disabled on remand.  Thus, the Court finds that there are outstanding issues that must be

9    resolved before a final determination can be made.

10          In an effort to expedite these proceedings and to avoid any confusion or misunderstanding

11   as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First,

12   because the ALJ failed to provide specific and legitimate reasons for rejecting plaintiff's treating

13   physician, the ALJ on remand shall reassess the opinion of plaintiff's treating physician.  Second,

14   because the ALJ failed to provide clear and convincing reasons to discount plaintiff's credibility, the

15   ALJ on remand will reassess plaintiff's credibility.[7]

16          Accordingly, **IT IS HEREBY ORDERED** that:  (1) plaintiff's request for remand is **granted**;

17   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

18   for further proceedings consistent with this Memorandum Opinion.

19          **This Memorandum Opinion and Order is not intended for publication, nor is it**

20   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

21

22   DATED: October 2, 2014

                                                    _____
23                                                              PAUL L. ABRAMS
                                                       UNITED STATES MAGISTRATE JUDGE

24

25

26

27   _____

28          [7]    Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to
     return to his past relevant work.

18